UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

LATOYA FREEMAN, as guardian of               CASE NO: 1:20-CV-23562-UU
ALEXANDER FREEMAN,

      Plaintiff,

v.

AMERISURE MUTUAL INSURANCE
COMPANY, a foreign corporation,

      Defendant.

_____/

## AMENDED COMPLAINT

Plaintiff LATOYA FREEMAN, as guardian of ALEXANDER FREEMAN,

by and through undersigned counsel, sues Defendant AMERISURE MUTUAL

INSURANCE COMPANY, and states as follows:

### PARTIES, JURISDICTION, AND VENUE

1.    This is an action for damages that exceed $75,000, exclusive of interest

and costs, and is otherwise within the jurisdictional limits of this Honorable Court.

2.    At all times material hereto, Alexander Freeman was a citizen of Palm

Beach County, Florida, over the age of eighteen years.

3.    Plaintiff Latoya Freeman, also a citizen of Florida and over the age of eighteen years, has been duly appointed as Alexander Freeman's guardian and legal representative.

4.    At all times material hereto, Defendant Amerisure Mutual Insurance Company was incorporated in, and organized under the laws of the State of Michigan, with its principal place of business in Michigan, and doing business throughout Florida, including Miami-Dade County.

5.    Amerisure is engaged in substantial, continuous, systematic and non-isolated business activity within the state of Florida. Amerisure is subject to personal jurisdiction in Florida because it regularly conducts business in Florida and it committed the tortious actions outlined in this complaint in the state of Florida.

6.    All conditions precedent to this action have been fully performed or waived.

7.    Plaintiff originally filed this action in the Circuit Court of Florida's Eleventh Judicial Circuit. Defendant Amerisure removed Plaintiff's action to this Court due to diversity of citizenship. (D.E. 1 ¶ 1).

8.    Plaintiff files this Amended Complaint pursuant to Federal Rule of Civil Procedure 15(a)(1)(B), which permits a party to amend its pleading once as a matter of course within 21 days after service of a motion under Rule 12(b).

## GENERAL ALLEGATIONS

9.     At all times material hereto, Alexander Freeman was employed as an electrical worker by Bonded Lighting Protection Systems, Inc. ("Bonded").

10.    On February 14, 2019, Alexander was working for Bonded on a construction site in Aventura, Florida. At approximately 1:15 p.m., during the course and scope of his employment, Alexander fell approximately 20 feet, resulting in catastrophic injuries, including a traumatic brain injury, that caused his physical and mental incapacitation.

11.    Alexander's workplace injury was covered under a workers' compensation insurance policy issued to his employer by Defendant Amerisure.

12.    Defendant Amerisure, by and through its employees and agents, exercised the exclusive ability to authorize or deny coverage for, and otherwise control access to, medical treatment needed by Alexander as a result of his workplace injury.

13.    Alexander was legally entitled to receive the "quick and efficient delivery of disability and medical benefits" and the "prompt delivery of benefits" pursuant to section 440.015, Florida Statutes.

14.    Alexander was taken by ambulance to the Aventura Hospital & Medical Center, where he was admitted in critical condition and in a comatose state.

15.    Bonded promptly reported the incident to its workers' compensation carrier, Defendant Amerisure.

16.    Within an hour after the accident, Amerisure adjuster Angel Goldstein retained the services of an outside limited liability company, ALCC, to dispatch a mobile drug testing unit to the Aventura Medical Center to collect and test Alexander's urine for illicit drugs.

17.    At all times relevant hereto, ALCC, and its agents and employees, were acting as agents of Defendant Amerisure, and acting within the course and scope of that agency relationship, making Defendant Amerisure vicariously liable for the conduct of ALCC, its agents, and its employees.

18.    Realizing Alexander was unable to consent to the collection and testing of his urine, ALCC owner, Renee Bryant, emailed Amerisure adjuster Goldstein:

> Do you by any chance have a signed drug testing authorization that the employee may have signed pre-employment? Sometimes that helps in these cases where the Claimant is unconscious and unable to consent. Situations like this always make the hospital staff nervous and sometimes unwilling to allow us in to take a specimen from the bedside catheter bag, but a signed authorization always helps.
>
> In the alternative, I recommend that if the accident happened today and it's that critical, we allow the hospital to stabilize him and attend to him medically tonight and we can go out in the morning and try to secure a sample for you. We can sometimes get Risk Management at the hospital to pave the way for us, but it's too late in the day to get them now. We can definitely go out in early in the

morning and see what we can do –again, if you have a signed authorization, it would certainly help…

19.     Alexander's employer provided an "Employee Acknowledgment Agreement" signed by Alexander six years earlier, on February 2, 2013, to adjuster Goldstein and ALCC owner Bryant, which stated:

> I understand that if I am injured during the course and scope of my employment and I test positive for the presence of alcohol and/or drugs, I may forfeit my eligibility for medical and indemnity benefits under Florida's workers' compensation law (Florida Statutes 440.101, 440.102). <u>I also understand that a refusal to test under this circumstance will automatically result in forfeiture of my eligibility for medical and indemnity benefits and immediate termination from employment.</u> (Emphasis added).

20.     Notably, in this Employee Acknowledgement Agreement, Alexander did not consent to the collection of his urine, or even consent to undergo drug and/or alcohol testing. While the underlined language in the Employee Acknowledgement Agreement purports to forfeit Alexander's eligibility for workers' compensation benefits if he refuses such testing, this provision is unconstitutional and invalid. *See Recchi Am. Inc. v. Hall*, 692 So. 2d 153, 154 (Fla. 1997) (holding irrebuttable presumption that workplace injury was caused primarily by the intoxication of the employee violates the constitutional right to due process).

21.    The "Employee Acknowledgement Agreement" is also in violation of Florida Statute 440.21(2), which provides "An Agreement by an employee to waive her or his right to compensation as required by this chapter is invalid".

22.    ALCC then dispatched Jonathan Alvarez to collect Alexander's urine.

23.    The very evening that Alexander was catastrophically injured and admitted to the hospital in critical condition, Jonathan Alvarez, without identifying himself or stating his purpose, interrupted a prayer group by Alexander's family at the hospital to ask for a medical proxy, and took Alexander's sister, Latoya Freeman, aside.

24.    Alvarez told Latoya Freeman that he needed her to sign important paperwork for Alexander's employer without disclosing that he was at the hospital to collect Alexander's urine.

25.    Alvarez disclosed the reason for his presence at the hospital only after a nurse demanded to know why he was there. After the nurse left, Alvarez pressured Latoya Freeman by telling her that she had no option but to sign the papers, and that it was important that she do so immediately.

26.    Latoya signed the document presented by Alvarez without knowing what she was signing.

27.     Shortly after giving Alvarez her signature, a nurse advised Latoya that Alvarez was from workers' compensation and was not at the hospital to help Alexander.

28.     Latoya then quickly advised Alvarez that she withdrew any consent for sampling Alexander's urine.

29.     Nevertheless, Alvarez snuck into Alexander's hospital room to take urine from his Foley catheter bag, but his efforts were thwarted when he was caught by a nurse prior to obtaining a urine sample.

30.     The following day, February 15, 2019, Alvarez returned to Aventura Medical Center and contacted the Risk Management Department to request a sample of Alexander's urine. Alvarez provided the Risk Management Department the invalid Employee Acknowledgment Agreement in an attempt to demonstrate no consent was needed for the collection of Alexander's urine, but the Department denied Alvarez's request.

31.     ALCC continued its efforts to get Alexander's urine despite his inability to give consent. An ALCC supervisor called Aventura Medical Center's Risk Management Department to again request access to take a sample of Alexander's urine, but that request was also denied.

32.     Alexander's employer, Bonded, advised an Amerisure adjuster that Alexander's accident should be covered by workers' compensation even if his urine sample was positive for drugs.

33.     In light of the difficulties the carrier was having obtaining Alexander's urine, workers' compensation counsel for Amerisure/Bonded filed a "Motion to Preserve Evidence" of blood, urine, and or other bodily fluids of Alexander Freeman in the workers' compensation court on February 15, 2019.

34.     The motion was denied the same day it was filed.

35.     Upon information and belief, ALCC and Defendant Amerisure continued to seek access to Alexander's urine through the hospital's Risk Management Department with collector Alvarez' supervisor, Franklin Bryant, now pressuring the hospital's Risk Management Department to allow collection of Alexander's urine using the unconstitutional and invalid Employee Acknowledgment Agreement.

36.     The Risk Management Department, at the direction of the hospital's in-house counsel, made the decision to allow ALCC and Defendant Amerisure to collect a urine specimen from Alexander's Foley catheter without consent. The Risk Management Department based its decision on the unconstitutional and invalid Employee Acknowledgment Agreement signed by Alexander in 2013.

37.     Shortly thereafter, ALCC collector Alvarez collected Alexander's urine sample, erroneously listing the date of collection as 14 February 2019 at 5:43 p.m. when the date of collection was February 15, 2019. ALCC sent the sample out for testing.

38.     That evening, ALCC owner Bryant emailed Amerisure adjuster Goldstein informing her that:

> We got the urine collected for you. The in-house hospital legal department intervened and allowed us to collect it based on your signed pre-employment authorization. Those really help! The sister rescinded her consent because one of the nurses told her she should not agree to this. Again, the hospital's in-house legal intervened and spoke with her and she agreed to allow the test. We collected it tonight from his bedside catheter bag with the assistance of his attending nurse and the consent of the family. I will let you know as soon as the results are back!

39.     Alexander's urine tested positive for carboxy-THC and a cocaine metabolite.

40.     On February 20, 2019, shortly after receiving the results, ALCC owner Bryant sent Amerisure adjuster Goldstein a copy of the laboratory report.

41.     ALCC owner Bryant told Amerisure adjuster Goldstein that the testing of Alexander's urine was not in compliance with Florida law or regulation, such that the test results could not be used as a basis to deny Alexander's claim for workers' compensation benefits.

42.     Under Chapter 440, Florida Statutes, once the carrier was notified of Alexander's workplace injury, Defendant Amerisure had three options: pay the claim; deny the claim within 14 days; or investigate the claim for up to 120 days in order to determine compensability while paying the claim during the period of investigation.

43.     On February 27, 2019, Amerisure denied Alexander's workers' compensation claim in its entirety "based on a positive post-accident drug test resulting in the claimant's violation of the Employer's drug free workplace program and the presumption that the accidental injuries were occasioned primarily by the intoxication of the claimant and/or the influence of such drugs at the time of the accident." Thus, it used the test on the wrongfully obtained urine sample to deny Alexander treatment for the catastrophic injuries he suffered in the workplace accident, despite Alexander's employer telling Amerisure that a positive drug test should not be used to deny Alexander workers' compensation benefits, and despite ALCC telling Amerisure that the drug testing was not conducted in compliance with Florida law and could not legally be used to deny Alexander workers' compensation benefits.

44.     Prior to its denial of Alexander's workers' compensation claim, despite being advised by his employer, Bonded, that Alexander's claim should be approved even if he tested positive for drugs, Defendant Amerisure did not confirm whether

Bonded had a valid Drug Free Workplace Program, as required by the Florida statutes in order to deny workers' compensation coverage based on the defense that the workplace accident was primarily caused by the employee being under the influence of drugs.

45.    Prior to its denial of Alexander's workers' compensation claim, Defendant Amerisure did not investigate whether Alexander's injuries were primarily caused by drug impairment.

46.    Prior to its denial of Alexander's workers' compensation claim, Defendant Amerisure knew or should have known that Bonded's Drug Free Workplace Program policy was not legally sufficient.

47.    Thus, despite knowing it had no legal basis on which to deny Alexander's workers' compensation claim, Defendant Amerisure, through its agents and employees, did just that.

48.    Defendant Amerisure denied Alexander's workers' compensation claim from February 27, 2019 until on or about December 3, 2019.

49.    As a result of Defendant Amerisure's wrongful denial of his workers' compensation claim, Alexander was denied specialized medical care for his brain injury, which exacerbated his injury and led to Alexander suffering from a rare bone disorder.

50.     As a result of Defendant Amerisure's wrongful denial of his workers' compensation claim, Alexander was forced to live with his sister upon his discharge from Aventura Medical Center, without any specialized medical care or treatment, from about June 7, 2019, until July 19, 2019. The lack of proper care during this time exacerbated Alexander's brain injury.

51.     On or about July 19, 2019, Alexander Freeman was admitted to an acute care facility based upon a letter of protection signed by his workers' compensation attorneys.

52.     On or about December 3, 2019, Amerisure/Bonded accepted Alexander's workers' compensation claim.

53.     Defendant Amerisure has not, however, paid the total bill for the medical care and treatment provided to Alexander by the acute care facility, leaving Alexander with a debt of approximately $100,000. Defendant Amerisure has refused to pay the amount of the bill that exceeds the amount allowed by the workers' compensation fee schedule because it contends such benefits are not recoverable under the workers' compensation system.

54.     By this action, Plaintiff seeks, *inter alia*, damages for personal injuries, severe emotional distress, medical expenses, and other harm caused by Defendant Amerisure's intentional acts committed during the course of Alexander's workers' compensation claim, subsequent to and distinct from his original workplace injury.

## COUNT I
## BREACH OF FIDUCIARY DUTY

55.     Plaintiff realleges paragraphs 1-54 as if fully set forth herein.

56.     Defendant Amerisure owed Alexander a fiduciary duty by virtue of its exclusive ability to authorize or deny Alexander's workers' compensation claim and his receipt of medical care and treatment for the injuries he sustained in the workplace accident.  This fiduciary duty required Defendant Amerisure to place the interests of Alexander above its own financial interests.

57.     This fiduciary duty required Defendant Amerisure to authorize coverage for Alexander in accordance with Florida's workers' compensation law and in order to protect his health and well-being.

58.     Defendant Amerisure breached its fiduciary duty by refusing to authorize Alexander's receipt of urgent medical care and treatment, including treatment for the catastrophic brain injury he suffered as a result of the workplace accident.

59.     Defendant Amerisure also breached its fiduciary duty by obtaining Alexander's urine without his consent, after strong-arming Alexander's sister to give her consent based on an invalid document signed by Alexander years before at the time of his hire.

60.     Defendant Amerisure also breached its fiduciary duty by denying Alexander's receipt of urgent medical care and treatment, including treatment for

the catastrophic brain injury he suffered as a result of the workplace accident, based upon the results the testing of Alexander's urine, despite being advised by both Alexander's employer and ALCC that the test results could not be used to deny Alexander's claim for workers' compensation benefits.

61.    Defendant Amerisure acted in this manner although it knew of the wrongfulness of its conduct and the high probability that Alexander would suffer severe emotional distress, that Alexander's condition would deteriorate, that Alexander would suffer extreme pain and suffering, and Alexander would suffer permanent physical injuries subsequent to and distinct from the workplace injury, but Defendant Amerisure intentionally pursued that course of conduct anyway.

62.    Defendant Amerisure took such tortious actions without justification and for the sole purpose of increasing their profits or bottom line by avoiding expenditures for care undeniably due Alexander under workers' compensation law.

63.    Defendant Amerisure's tortious actions constitute an actionable tort, separate and apart from the obligation of Defendant to provide and authorize medical benefits for Alexander under the Florida Workers' Compensation Act.

64.    Defendant Amerisure's tortious actions resulted in injuries to Alexander that are separate and distinct from the workplace injury he suffered on or about February 14, 2019.

65.     As a direct and proximate cause of Defendant Amerisure's breach of fiduciary duty, Alexander has sustained damages.  Alexander was unable to timely receive the necessary care and treatment needed to treat his workplace injuries, has suffered deteriorated health, has suffered physical injuries subsequent to and distinct from his original workplace injury, has endured extreme pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, medical expenses, and aggravation of a previously existing condition, if any.  The losses are either permanent or continuing and Alexander will suffer the losses in the future.

WHEREFORE, Plaintiff demands judgment against Defendant Amerisure for compensatory and punitive damages, costs, pre-judgment and post-judgment interest, and for such other and further relief that this Court deems just and proper.

## COUNT II
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

66.     Plaintiff realleges paragraphs 1-54 as if fully set forth herein.

67.     Under Chapter 440, Alexander was entitled to receive workers' compensation benefits, including, but not limited to, the prompt receipt of healthcare.

68.     Defendant Amerisure, which is vicariously liable for the actions of its agent ALCC, which was at all relevant times acting within the course and scope of

this employment/agency relationship, is liable for the intentional infliction of emotional distress to Alexander as a result of:

     a.    denying Alexander essential, urgent, and medically necessary treatment and care, knowingly without any legitimate factual or legal basis, and knowing that such conduct would result in Alexander suffering permanent injury;

     b.    wrongfully obtaining a sample of Alexander's urine while he was in a comatose state based on an agreement that it knew was legally invalid;

     c.    wrongfully denying Alexander's receipt of urgent medical care and treatment, including treatment for the catastrophic brain injury he suffered as a result of the workplace accident, after being advised by ALCC that the testing was not in compliance with Florida law and could not be used to deny Alexander his workers' compensation benefits;

     d.    wrongfully denying Alexander's receipt of urgent medical care and treatment, including treatment for the catastrophic brain injury he suffered as a result of the workplace accident, after being advised by Bonded that a positive test result should not be used to deny Alexander's workers' compensation benefits; and

e.      failing to pay Alexander his disability/indemnity benefits despite knowing that Plaintiff was in dire financial condition and depended on such benefits to provide food and shelter for himself and his minor child.

69.    Defendant Amerisure knew of the wrongfulness of its conduct and the high probability that Alexander would suffer severe emotional distress and injury as a result of its conduct, but Amerisure intentionally pursued that course of conduct anyway.

70.    Defendant Amerisure took such tortious actions without justification and for the sole purpose of increasing its profits or bottom line by avoiding expenditures for care undeniably due Alexander under workers' compensation law.

71.    Defendant Amerisure's tortious actions were unwarranted, outrageous, and extremely dangerous to the health and life of Alexander.

72.    By virtue of its exclusive authority to authorize Alexander's receipt of workers' compensation benefits, Defendant Amerisure was in a position of power over Alexander, and asserted that power to Alexander's detriment.

73.    To Defendant Amerisure's knowledge, Alexander, as a result of his physical condition after the workplace accident, was peculiarly susceptible to emotional distress, but Amerisure proceeded in its intentional misconduct in the face of such knowledge.

74.     Defendant Amerisure's tortious actions constitute an actionable tort, separate and apart from the obligation of Amerisure to provide and authorize medical benefits for Alexander under the Florida Workers' Compensation Act.

75.     Defendant Amerisure's tortious actions resulted in injuries to Alexander that are separate and distinct from the workplace injury he suffered on or about February 14, 2019.

76.     When Alexander regained consciousness, he became aware of Defendant Amerisure's actions—that it wrongfully obtained his urine sample; wrongfully relied on the test results of that sample to deny his workers' compensation claim; wrongfully prevented him from obtaining urgent medical care and treatment, including treatment for the catastrophic brain injury he suffered as a result of the workplace accident, resulting in the exacerbation of his workplace injuries; and wrongfully withheld his disability/indemnity benefits despite knowing that Plaintiff was in dire financial condition and depended on such benefits to provide food and shelter for himself and his minor child. As a result of Defendant Amerisure's conduct, Plaintiff suffered severe emotional distress.

77.     In conducting these tortious actions, Defendant Amerisure engaged in unlawful, fraudulent, and outrageous conduct that goes beyond all bounds of decency and is extreme, outrageous, shocking, atrocious and utterly intolerable in a civilized society.

78.     As a direct and proximate result of Defendant Amerisure's conduct, Alexander has suffered severe emotional distress, and substantial other damages including bodily injury, resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, lost wages, and aggravation of a previously existing condition, if any.   The losses are either permanent or continuing and Alexander will suffer the losses in the future.

WHEREFORE, Plaintiff demands judgment against Defendant Amerisure for compensatory and punitive damages, costs, pre-judgment and post-judgment interest, and for such other and further relief that this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury in this action of all issues that are so triable.

DATED this 16th day of September 2020.

Respectfully submitted,

s/ Diana L. Martin
THEODORE J. LEOPOLD, ESQ.
Florida Bar No: 705608
tleopold@cohenmilstein.com
DIANA L. MARTIN, ESQ.
Florida Bar No.: 624489
dmartin@cohenmilstein.com
Cohen Milstein Sellers & Toll PLLC
2925 PGA Boulevard, Suite 200
Palm Beach Gardens, FL  33410
T:  (561) 515-1400
F: (561) 515-1401

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed

with the Clerk of Court using the CM/ECF system on September 16, 2020, and the

foregoing document is being served this day on all counsel or parties of record on

the Service List below, either via transmission of Notices of Electronic Filing

generated by CM/ECF or in some other authorized manner for those counsel or

parties who are not authorized to receive Notices of Electronic Filing.

s/ Diana L. Martin
DIANA L. MARTIN, ESQ.
Florida Bar No.: 624489
dmartin@cohenmilstein.com

## SERVICE LIST

Joseph T. Kissane, Esquire
Cole, Scott & Kissane, P.A. - Jacksonville
Via Email: joseph.kissane@csklegal.com
4686 Sunbeam Rd., Suite 102
Jacksonville, FL 32257
Telephone: (904) 672-4000
Facsimile: (904) 672-4050
*Via CM/ECF*

Jason R. Hull, Esquire
Jessica C. Fernandez, Esquire (1015540)
WICKER SMITH O'HARA, McCOY & FORD, P.A.
100 N. Tampa St., Suite 1800
Tampa, FL 33602
Telephone: (813) 222-3939
Facsimile: (813) 222-3938
*Via CM/ECF*